NATIONAL CLOAK & SUIT CO. v. LONDY & FRIEND.

(District Court, N. D. Illinois, E. D. February 6, 1914.)

No. 30,513.

TRADE-MARKS AND TRADE-NAMES (§ 3*)—UNLAWFUL COMPETITION—CORPO-
RATE NAME.

    Complainant, National Cloak & Suit Company, began business in 1888 and used the word "National" as applied to their mail order cloak and suit business, which, by extensive and expensive advertising and fair treatment to customers, became well and favorably known throughout the United States as applying to garments of complainant's manufacture. Defendants, citizens of Illinois and engaged in the retail cloak and suit business, began to use the word "National" in 1908 and 1909, advertising "National garments," "Made by the National Cloak Manufacturing Company," so wording their advertisements as to mislead the public to believe that the goods were manufactured by complainant. *Held*, that the word "National," while not distinctive, had nevertheless acquired a meaning which was the property of complainant, and that it was entitled to an injunction restraining defendants' use thereof.

    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. § 3.*]

In Equity. Suit by the National Cloak & Suit Company against Londy & Friend, to restrain defendants' use of the word "National." Writ granted.

Archibald Cox and Abraham L. Gutman, both of New York City, and Frank F. Reed and Edward S. Rogers, both of Chicago, Ill., for complainant.

Jesse Lowenhaupt and Lewis F. Jacobson, both of Chicago, Ill., for defendants.

KOHLSAAT, Circuit Judge. The bill herein was filed to restrain unfair competition, among other objects.

Complainant is a New York corporation. Defendants reside in and are citizens of Illinois. The suit involves only the cloak and suit business, and the use of the name "National" in connection therewith. Complainant conducts its business in New York City under what is known as the mail order system, while defendants are engaged in the retail trade at Chicago.

From 1888 to 1903, the business now being conducted by complainant was operated by Rosenbaum and Hartman as copartners, who, in 1889, admitted Solomon G. Rosenbaum, the present president of the company, into the firm. In 1903 the business was incorporated; the corporation taking over the business, good will, assets, etc. During all the time since 1888 the business had been carried on in association with the name "National Cloak," in a women's clothing business. The corporation name of "National Cloak & Suit Company" was taken at the time of incorporation. It has always kept the word "National" to the front. As is customary in the mail order business, advertising has been done in magazines and otherwise, and a vast number of catalogues have been distributed to persons desiring them, whereby a very extensive business has been built up—always in connection with the word "National."

From the record it appears that complainant's was practically the only business run under that name, so that its manufactures were known in connection with the word. Numerous attempts have been made to use the name in the cloak and suit trade, which complainant has headed off by representation, or suit, as in Rosenbaum et al. v. Bull et al. (no written opinion), in which a decree was entered in this district. There is oral reference in the records to other successful suits.

It appears that from an humble beginning in 1888 the business had grown to vast proportions, amounting annually to many million dollars, and extending throughout the United States. Among other localities, that of Chicago and vicinity embraced a constituency of several thousand. So that the National Cloak & Suit Company of complainant was well known in this community prior to the commencement of this suit. In 1908 and 1909, defendants began to use the name, including the word "National," in connection with the cloak business. In 1911 they were doing business under the name "Palmer's" exclusive cloak house, 146 State street, Chicago; and at another location under the name "Macey's." At the former place, on or about January 19, 1911, defendants advertised in the Chicago papers, in part as follows:

"Extra, Extra, Extra, $50,000 worth of cloaks, suits and dresses purchased from the National Cloak Mfg. Co. at less than 50 cents on the dollar. Every woman throughout the land knows the National garments. No need for us to mention character and quality, the name alone suffices."

This manufacturing business, defendants say, ended in 1911. The name National Cloak Manufacturing Company does not appear in the Chicago city directory for any of the years named, and it appears to have not had even a local popular recognition as a manufacturing concern. The statement in the advertisement, therefore, as to the widely known character and quality of "National garments" was not fairly applicable to defendants' goods. The names "Palmer" and "Macy," it appears, were well-known cloak and suit houses, the former in Chicago and the latter in New York, which facts seem from the record to explain defendants' manner of availing themselves of business conditions.

It further appears from the evidence that in January and February, 1911, defendants advertised cloaks, etc., again, under the name "National garments," "made by the National Cloak Mfg. Co." On protest being made by complainants, this ceased. In August, 1911, defendants opened a retail cloak and suit store under the name National Cloak Company. A number of persons, being familiar with complainant's National garments, were deceived by these signs. Some were aggrieved at the treatment accorded them. It was complainant's policy to fill orders promptly and carefully, and on complaint to always return the money, relying upon this fair treatment and other considerate methods for the building up of its business. The record shows instances in which defendants by their contrary methods worked injury to complainant. Several parties testified that they supposed defendants were a branch house of complainant.

It seems clear from the testimony that defendants deliberately took advantage of complainant's good name, acquired through popular business methods and expensive advertising, to sell their goods. While it would not ordinarily seem probable that complainant's mail order business would be affected by local attempts to appropriate its trade, it appears from the record that complainant was injured. Defendants were notified to discontinue the use of the name National Manufacturing Company and other misleading uses of the word National in connection with cloaks and suits, and must have known what complainant claimed. The word National is not, of itself, very distinctive; but where, as here, it has acquired a meaning which is the property of complainant, it should be protected.

The injunction may go as prayed.